**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

BEHAVIORAL HEALTHCARE PARTNERS,
INC., ET AL.,

     Plaintiffs,

        v.                   CIVIL NO. 04-1378 (PG)

ORLANDO GONZALEZ-RIVERA,
Executive Director of the
Puerto Rico Health Insurance
Administration, ET AL.,

     Defendants.

**OPINION AND ORDER**

Before the Court is defendants' motion to dismiss the instant complaint on abstention grounds, for failure to state a claim, and based on sovereign and qualified immunity. Having parsed the complaint, the record and the applicable law, for the reasons elucidated below, the motion is **GRANTED IN PART AND DENIED IN PART.**

**I. BACKGROUND**

The relevant facts, accepted at this stage as true, are drawn from the complaint. See Fed.R.Civ.P. 12(b)(6). Plaintiff Behavioral Healthcare Partners, Inc. ("BHP"), is a corporation incorporated and authorized to conduct business in the Commonwealth of Puerto Rico. As a managed behavioral healthcare company, BHP coordinated the delivery of mental healthcare services to persons eligible for Medicare and Medicaid coverage under service contracts executed between BHP and the Puerto Rico Health Insurance Administration, or the Administracion de Seguros de Salud ("ASES").

On April 19, 2002, ASES cancelled the first contract citing its new designs for healthcare reform and indicating that it would issue

new requests for contract proposals.  Following negotiations, BHP and
ASES entered into a second contract on June 19, 2002, where BHP was
awarded a contract in six regions.  Co-defendant Orlando Gonzalez,
Executive Director of ASES, allegedly based on knowledge that BHP
would be forced out of business if it did not contract with ASES,
provided BHP with less than 11 days to expand its operations and
services to administer the transition of 600,000 new beneficiaries to
BHP.

       In October of 2002, BHP verbally informed Gonzalez that there was
insufficient funding by ASES and that the healthcare reform was
mismanaged.  Later in October and November, Mark Blackburn, cofounder
and shareholder of BHP, made public statements pertaining to the
mismanagement of Puerto Rico's mental health system.

       Within days, plaintiffs claim that co-defendant Gonzalez informed
BHP that it would be required to perform a compliance audit.  The
complaint goes on to specify details regarding the alleged falsity of
the audit findings, defendants' arbitrary and unreasonable denials of
plaintiffs' right to respond to the findings, and the ultimate
cancellation of the contract.  Plaintiffs likewise assert that
defendants disseminated false information to the press and federal
authorities which resulted in unreasonable searches and seizures of
plaintiffs' property.  Plaintiffs further aver that the cancellation
of the contract, the seizures and the public announcements stemming
therefrom were concerted retaliation for plaintiffs' exercise of their
constitutional rights, ultimately stigmatizing plaintiffs by
destroying their ability to qualify for future government contracts
and employment.

BHP and the other co-plaintiffs[1] filed the present complaint on April 30, 2004 pursuant to 42 U.S.C. § 1983 alleging that defendants[2] "acting under color of state law intentionally, arbitrarily, capriciously and unreasonably engaged in an unconscionable scheme to hurt plaintiffs' reputation and business goodwill in order to justify ... the cancellation of a legitimately executed healthcare services contract." (Docket No. 1 at 3)

In redress, plaintiffs sought declaratory judgment to the effect that defendants violated their civil and constitutional rights, an award of compensatory and consequential damages in an amount not less than $10,000,000 each, and punitive damages, as well as attorney fees and costs.

Defendants Gonzalez and Lourdes Pagan filed a motion to dismiss on July 29, 2004 (Docket No. 7), arguing that the present complaint is the improper elevation of a contract dispute to constitutional stature. They further allege that this is merely the latest of several related proceedings; to wit, the federal criminal investigation of the activities of BHP and its principal shareholders, the civil action filed by the Commonwealth of Puerto Rico for breach of contract against BHP, and BHP, Blackburn and Grafals' countersuit, also pending before the state court.

Following their recitation of this history, defendants prayed for abstention under the <u>Burford</u> and <u>Colorado River</u> doctrines, submitting that the exceptional circumstances which warrant abstention are present in this case. Among other arguments, defendants submitted

---

[1] The other co-plaintiffs are Mark Blackburn, Eric Grafals-Medina, Marilu S. Grafals, the Conjugal Partnership Grafals-Grafals, Maria de Lourdes Marti-Sierra, Anibal Bravo, and the Conjugal Partnership Bravo-Marti.

[2] The defendants are Orlando Gonzalez-Rivera, Executive Director of ASES, and Lourdes Pagan-Delgado, Director of Internal Auditing of ASES, in their personal and official capacities, and an unknown defendant.

that there were important state policies at issue, characterizing this matter as a "camouflaged" breach of contract case sufficiently parallel to the state actions to trigger abstention.  Defendants further argued that plaintiffs had failed to state a procedural due process, substantive due process, First Amendment, Fourth Amendment, or equal protection claim.  Finally, defendants maintain that they were entitled to sovereign immunity and/or qualified immunity.

Plaintiffs responded to the motion arguing that abstention is the exception and not the rule.  (Docket No. 16)  They contend they proffered sufficient allegations to carry their constitutional claims. The invocation of sovereign immunity was deflected by pointing out that defendants had also been sued in their personal capacity.  As for the qualified immunity defense, plaintiffs assert that it is unavailable here because the alleged violations injured clearly-established constitutional rights.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded factual averments as true and must draw all reasonable inferences in the plaintiff's favor.  Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993).  A Court should not dismiss a complaint for failure to state a claim unless it is clear that plaintiff will be unable to recover under any viable theory.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  This deferential standard is not a "toothless tiger," Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996), and the Court is not obliged to credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like."  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

Additionally, there is no longer a heightened pleading standard in civil rights cases. Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61 (1st Cir. 2004). "[T]he [Supreme] Court has signaled its disapproval of all heightened pleading standards except those that emanate from either congressional or Rule-based authority." Id. at 66. Hence, courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2). Id. As such, a complaint need only include "a short plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47.

### III. DISCUSSION

The Court first examines defendants' abstention arguments. It then proceeds to analyze whether the complaint states a due process, First Amendment, Fourth Amendment, or equal protection claim. Finally, the Court passes on the various invocations of immunity and the propriety of exercising supplemental jurisdiction over plaintiffs' state law claims.

### A. Abstention

Saving the rare exception, federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Here, defendants pray for the application of two such exceptions: the Burford doctrine and the Colorado River doctrine.

*1. Burford Abstention*

Burford-type abstention operates to avoid conflict with a state's administration of its own affairs.  Burford v. Sun Oil Co., 319 U.S. 315 (1943).  The Supreme Court has counseled federal courts "sitting in equity" to refrain from interfering with "proceedings or orders of state administrative agencies" when "timely and adequate state court review is available" and:

> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Pub. Serv., Inc. v. City Council of New Orleans [NOPSI], 491 U.S. 350, 361 (1989)(quotations omitted).

Post-NOPSI Burford applies only in narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal-court review inappropriate.  Sevigny v. Employers Ins. of Wausau, 411 F.3d 24, 29 (1st Cir. 2005)(citing Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993)(other citations omitted).  That said, abstention must not imperil a special federal interest.  See Sevigny, 411 F.3d at 27 (interpreting NOPSI as rejecting abstention where special federal interests such as those embodied in the regulatory scheme of the Federal Energy Regulatory Commission were left to state court interpretation)(other citations omitted).

In this case, although there is indeed a complex state proceeding which is apparently being heard in the local courts, the adjudication plaintiffs have initiated does not constitute an interference with state law.  Instead, plaintiffs have alleged deprivations of

constitutional rights, and such an adjudication would not needless abrade any comprehensive state policy.  Accordingly, abstention on the basis of <u>Burford</u> is **DENIED**.

## 2. Colorado River Abstention

    In <u>Colorado River</u>, the Supreme Court sanctioned the use of abstention to avoid duplicative litigation in complex cases.  <u>Colorado River</u>, 424 U.S. at 814; <u>see also</u> 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4241 at 28-29 (1988).  However, the circumstances permitting abstention under <u>Colorado River</u> for reasons of "wise judicial administration" are quite "limited" and indeed "exceptional."  <u>Id.</u> at 818.  "Only the clearest of justifications will warrant dismissal."  <u>Id.</u> at 819; <u>Currie v. Group Ins. Comm'n</u>, 290 F.3d 1, 10 (1st Cir. 2002) (instructing that there must be "extraordinary circumstances" before a federal court may abstain on <u>Colorado River</u> grounds).  Thus, the district court's discretion whether to dismiss a case on Colorado River grounds should be heavily weighted against dismissal.  KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003).

    The First Circuit has developed a non-exhaustive list of factors to consider in determining whether <u>Colorado River</u> abstention might be appropriate:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Id. (citation omitted).

No one factor is meant to be determinative, but rather courts must make a "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." Colorado River, 424 U.S. at 818; see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983) (abstention under the Colorado River standard "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."); KPS & Assoc., 318 F.3d at 10.

In the case at bar, no factor weighs strongly in favor of abstention.  The first two considerations are non-factors in this case.  While the state case was filed before the federal case, the question of priority was meant to be looked at in a "pragmatic, flexible manner ... with a view to the realities of the case at hand" and should focus on how much "progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21.  Here, the Court cannot tell how much progress has been made in at the state level, but the federal case is at its incipience.  It is also unclear that the federal action was filed or pursued as a reaction to an adverse state court action, "a factor that weighs heavily in favor of abstention." See Rio Grande Community Health Center, Inc. v. Raelene, 397 F.3d 56, 72 (1st Cir. 2005)(citation omitted).

While the factor focusing on the desirability of avoiding piecemeal litigation is certainly present, this alone is not enough: "the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some exceptional basis for requiring the case to proceed entirely in the Commonwealth court." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 535 (1st Cir. 1991) (citation

omitted).  "[C]ourts generally have agreed that rare circumstances exist only when a case presents complex questions of state law that would best be resolved by a state court."  Currie v. Group Ins. Com'n, 290 F.3d 1, 11 (1st Cir. 2002) (quotations omitted).  As determined above, no such exceptional circumstances have been alleged.

On the other hand, there are other crucial factors that weigh against abstention.  This is a section 1983 action predicated on violations of federal constitutional rights.  Congress provided plaintiffs in section 1983 the right to a federal forum for the ventilation of their constitutional claims.  See Zwickler v. Koota, 389 U.S. 241, 248 (1967) (recognizing that Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims).  Moreover, there is no reason to defer to the state court's interpretation of the legal issues involved.  Cf. Currie, 290 F.3d at 11 (staying federal action on Colorado River grounds when case involved complicated state law issues that might resolve the federal action if decided first by state court).  Finally, although it is true that prospective relief also could have been sought in the local courts, plaintiffs have a reasonable explanation for why they would want to file actions simultaneously in federal and state courts.  Rio Grande Community Health Center, 397 F.3d at 72.  Because of sovereign immunity, certain retroactive compensatory damages may only be requested in the local court.  Id.  The motion for abstention on Colorado River grounds is therefore **DENIED**.

## B. Failure to State a Claim

Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law.  42 U.S.C. § 1983; Blessing v.

<u>Freestone</u>, 520 U.S. 329, 340 (1997); <u>Evans v. Avery</u>, 100 F.3d 1033, 1036 (1st Cir. 1996).  Plaintiffs satisfy the first condition by alleging that the deprivation of rights occurred "under color of state law."  Puerto Rico is considered a state for section 1983 purposes, <u>see</u> <u>Deniz v. Municipality of Guaynabo</u>, 285 F.3d 142, 146 (1st Cir. 2002), and the complaint challenges actions attributed to ASES (an agency of the Puerto Rican government) and its functionaries (the individual commonwealth defendants).  The Court therefore concentrates its analysis on the second element of a viable section 1983 claim-- whether plaintiffs have endured a deprivation of rights secured either by the Constitution or by federal law.

Plaintiffs have alleged violations of procedural due process, substantive due process, First Amendment rights, Fourth Amendment rights, and equal protection.  Defendants maintain these claims are all flawed.  The Court examines them seriately.

<u>1. Procedural Due Process</u>

For a procedural due process claim to succeed, the plaintiffs must identify a protected property or liberty interest.  <u>Centro Medico</u>, 406 F.3d at 7 (citing <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972)).  In this case, defendants have invoked both.

To establish a constitutionally protected property interest, a plaintiff "must have more than an abstract need or desire for [a thing] ... [and] more than a unilateral expectation of it." <u>Roth</u>, 408 U.S. at 577.  A plaintiff instead must "have a legitimate claim of entitlement to it."  <u>Id.</u>  Plaintiffs cite the cancellation of their contract as the deprivation of a constitutionally-protected property interest.

The First Circuit has held "with a regularity bordering on the echolalic" that a simple breach of contract does not amount to an

unconstitutional deprivation of property.  Redondo-Borges v. U.S. Dept. of Housing and Urban Development, 421 F.3d 1, 10 (1st Cir. 2005) (collecting cases).  "To hold otherwise would run the risk of transmogrifying virtually every dispute involving an alleged breach of contract by a state or a state agency into a constitutional case." Id.  Thus, "the existence of a state contract, simpliciter, does not confer upon the contracting parties a constitutionally protected property interest," and breach of contract is not per se actionable under section 1983.  Id.

To show the deprivation of a property interest in the independent contractor context which might justify a departure from this settled position, a plaintiff must allege that he had a protected status or that his contract could only be terminated "for cause."  See id. (quoting Linan-Faye Constr. Co. v. Hous. Auth., 49 F.3d 915, 932 (3d Cir. 1995).

Here, however, these circumstances have not been pleaded.  Taking the well-pleaded facts in the complaint in the light most favorable to the plaintiffs, the complaint reads like the constitutionalization of a contract dispute merely because of the presence of a state party. Accordingly, the Court finds no property interest.

Plaintiffs have also premised a 1983 claim on the deprivation of a liberty interest.  In this context, "[a] liberty interest requiring due process protection arises only when a company is barred from the procurement process, or eliminated from it, because of charges of fraud or dishonesty made without an opportunity for a hearing on those charges."  Smith & Wesson, Div. of Bangor Punta Corp. v. U.S., 782 F.2d 1074, 1081 (1st Cir. 1986); but cf. Siegert v. Gilley, 500 U.S. 226, 233-34 (1991) (holding that statements that "would undoubtedly damage the reputation of one in [plaintiff's] position, and impair his

future employment prospects" nevertheless did not amount to a deprivation of a constitutionally protected liberty interest).

Assuming that such a liberty interest existed, the cases that support the existence of a protected liberty interest are relevant only to an effective debarment claim, Redondo-Borges, 421 F.3d at 8 n.3 (1st Cir. 2005), which has not been pleaded.  The complaint conclusorily alleges that plaintiffs' prospects for employment have been extinguished.  Still, the complaint does not buttress the allegation with supporting facts. In particular, the plaintiffs have not averred that they have bid on a new contract since the termination.  "A single incident is insufficient to establish a pattern or practice of exclusion." Id. at 9.

Neither does the fact that notice pleading governs at the Rule 12(b)(6) stage save the plaintiffs' conclusory allegation.  Courts must continue to "eschew ... reliance on bald assertions [and] unsupportable conclusions." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Thus, the Court must find that plaintiffs have failed to allege deprivation of a liberty interest.  Having determined that plaintiffs' complaint is devoid of a well-pleaded procedural due process claim, defendants' motion to dismiss is **GRANTED**.

## 2. Substantive Due Process

Plaintiffs have also asserted a substantive due process claim. In determining whether the state has violated an individual's substantive due process rights, a federal court may elect first to address whether the governmental action at issue is sufficiently conscience shocking. See County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); Rivera v. Rhode Island, 402 F.3d 27, 36 (1st Cir. 2005).  The state action must be "so egregious, so outrageous, that it

may fairly be said to shock the contemporary conscience." <u>Id.</u>
"[C]onduct intended to injure in some way unjustifiable by any
government interest is the sort of official action most likely to rise
to the conscience-shocking level." <u>Id.</u>

Applying these principles to the case at bar, this Court
concludes that the allegations raised in the complaint do not rise to
such a level that "may fairly be said to shock the contemporary
conscience." Plaintiffs have alleged an "arbitrary" audit which
revealed accounting improprieties ultimately resulting in the
cancellation of a contract and a consequential search, which was not
even characterized as "warrantless." On those allegations, the Court
simply cannot find an abrasion of rights amounting to a substantive
due process violation. The motion to dismiss this claim is also
**GRANTED**.

### 3. First Amendment

In <u>Board of County Commissioners v. Umbehr</u>, 518 U.S. 668, 673
(1996), the Supreme Court held that First Amendment protections extend
to independent contractors alleging termination of at-will government
contracts in retaliation for the exercise of the freedom of speech.
On that basis, the Supreme Court held that a person so situated could
state a valid cause of action under section 1983. <u>Id.</u> at 686; <u>Centro
Medico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1, 9 (1st
Cir. 2005).

Moreover, clearly-established law prohibits the government from
conditioning the revocation of benefits on a basis that infringes
constitutionally protected interests. <u>See</u> <u>Perry v. Sindermann</u>, 408
U.S. 593, 597 (1972). Specifically, it is crystal that an independent
contractor cannot be terminated in retaliation for exercising its

First Amendment rights.  See Umbehr, 518 U.S. at 685; El Dia, Inc. v. Governor Rossello, 165 F.3d 106, 110 (1st Cir. 1999).

A plaintiff states a claim for retaliation for the exercise of First Amendment rights by alleging that he engaged in protected speech and that this conduct was a "substantial" or "motivating" factor driving the retaliatory action.  See Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004); Centro Medico, 406 F.3d at 9.

At the motion to dismiss stage, plaintiffs have met that burden. They have alleged that one of BHP's major shareholders made deprecatory comments anent ASES' handling of its healthcare reform, and that immediately following those comments, ASES and its executives initiated an "arbitrary" audit designed to provide a vehicle for the termination of their contract.  Taking these allegations as true, these show an abrasion of First Amendment rights and suffice to state a claim.  Defendants' motion to dismiss is accordingly **DENIED** at this stage.


## 4. Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."  U.S. Const. amend. IV.  As plaintiffs correctly recognize, where a private individual is a defendant in a section 1983 action, "there must be a showing that the private party and the state actor jointly deprived plaintiff of [his or] her rights."  Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 351 (1st Cir. 1995).  Plaintiffs acknowledge that the searches and seizures alluded to in the complaint were executed by the federal authorities.  They thus attempt to obviate defendants' assertion that they should instead lay their claim at the federal "doorstep," by affirming a conspiracy between local and

federal officials.  That said, plaintiffs have alleged no facts to support that theory.  The motion to dismiss the claim must therefore be **GRANTED**.

*5. Equal Protection*

Under the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment.  See <u>City of Cleburne</u> <u>v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439-40 (1985).  In order to establish their claim, plaintiffs need to allege facts indicating that, "compared with others similarly situated, [they were] selectively treated ... based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  <u>Barrington Cove Ltd. Partnership v. Rhode Island Housing and</u> <u>Mortg. Finance Corp.</u>, 246 F.3d 1, 7 (1st Cir. 2001)(citation omitted).

Here, plaintiffs have not claimed membership in a protected class or demonstrated that other entities, similarly situated, i.e. in the same financial situation, were treated differently concerning the award of hospital contracts.  "Their inability to identify these doctrinal rudiments is fatal to their equal protection challenge." <u>See</u> <u>Centro Medico</u>, 406 F.3d at 9.  The motion to dismiss this equal protection claim is hence **GRANTED**.

**C. 11th Amendment Immunity**

The Eleventh Amendment states that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of any foreign states."  The Eleventh Amendment accordingly "renders states, including Puerto Rico, immune from claims brought in federal court by citizens of the same or

any other state." <u>Bernier Aponte v. Izquierdo-Encarnacion</u>, 196 F.Supp.2d 93, 98 (D.P.R. 2002). As such, the Commonwealth of Puerto Rico cannot be sued for damages in a federal court unless it consents to suit, waives its immunity or in the event that Congress abrogates that immunity. <u>See</u> <u>Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority</u>, 991 F.2d 694, 697 (1st Cir. 1993).

Nevertheless, Eleventh Amendment immunity does not bar prospective injunctive relief against official-capacity defendants, such as that requested here. <u>See</u> <u>Rosie D. v. Swift</u>, 310 F.3d 230, 234 (1st Cir. 2002). Nor does that doctrine bar relief (whether money damages or injunctive relief) against the commonwealth defendants in their individual capacities. <u>Ex Parte Young</u>, 209 U.S. 123, 159 (1908). Therefore, the invocation of 11th Amendment immunity is to no avail, and the motion to dismiss on this basis is **DENIED.**

## D. Qualified Immunity

Under the doctrine of qualified immunity, public officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-19 (1982)("Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action."); <u>see also</u> <u>El Dia</u>, 165 F.3d at 110 (affirming denial of motion to dismiss on qualified immunity grounds where 1st Amendment claim was premised on the withdrawal of advertising in retaliation for protected speech). The doctrine protects such officials from liability for mere "mistaken judgments" about the legality of their actions. <u>Malley v. Briggs</u>, 475 U.S. 335, 343 (1986).

In this case, however, the defense is unavailing. Clearly-established law prohibits the government from terminating an independent contractor in retaliation for the exercise of First Amendment rights. See Umbehr, 518 U.S. at 685. Otherwise, this is not a case of "mistaken judgment" for which the defendants ought to be immune from liability. Malley, 475 U.S. at 343. Therefore, the motion to dismiss on the basis of qualified immunity is **DENIED**.

**E. State Claims**

A federal district court may exercise supplemental jurisdiction over all other claims that are so related to that claim that they form part of the same case and controversy. See 28 U.S.C. § 1367(a). However, the district court has discretion to decline such jurisdiction in a few circumstances: where the state law issues are difficult or novel, where the state law claims "substantially predominate" over other claims in the action, where the district court has dismissed all claims over which it has original jurisdiction, and in other "exceptional circumstances" raising "compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c); Belini v. Washington Mut. Bank, 412 F.3d 17, 28 (1st Cir. 2005).

It is clear from the complaint that plaintiffs' state law claims raise complex issues of state contract law. Moreover, the Court having granted the defendants' motion to dismiss all but the 1st Amendment claim, the state contract/tort claims would necessarily predominate and predicate the federal claim. Therefore, the Court in its discretion declines to exercise supplemental jurisdiction and will accordingly dismiss the state claims without prejudice.

Civil No. 04-1378 (PG)                                              Page 18

## IV. CONCLUSION

**WHEREFORE,** in light of the foregoing, defendants' motion to dismiss is **GRANTED IN PART, AND DENIED IN PART; GRANTED** as to the due process, Fourth Amendment and equal protection claims, and **DENIED** as to the requests for abstention, dismissal of the First Amendment claim, and the invocation of sovereign and qualified immunity. Judgment shall be entered dismissing the applicable federal claims with prejudice, and the state law claims without prejudice.

**IT IS SO ORDERED.**


In San Juan, Puerto Rico, September 28, 2005.



S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE